IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ARGOS PORTS (HOUSTON) LLC,              §
                                        §
                Plaintiff,              §
                                        §
v.                                      §     CIVIL ACTION NO. H-18-0327
                                        §
KIRBY INLAND MARINE, LP and             §
GREENS BAYOU FLEETING, LLC,             §
                                        §
                Defendants.             §

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Third Party Defendant Terral River Service, Inc.'s Brief Supporting Rule 12(b)(6) Motion to Dismiss (Docket Entry No. 112) and Terral River Services Inc.'s Amended Motion to Dismiss (Docket Entry No. 115) (collectively, "Terral River's Motion to Dismiss") and Terral River Service, Inc.'s Motion for Separate Trials ("Terral River's Motion for Separate Trials") (Docket Entry No. 113).

I.  **Factual and Procedural Background**

Kirby Inland Marine, LP ("Kirby") owns a barge-fleeing facility located along the Greens Bayou channel (the "Kirby Terminal") where it maintains a fleet of barges owned by third-parties including Ceres Barge Plan, LLC ("Ceres"), Ingram Barge Company ("Ingram"), Marquette Transportation Company, LLC

("Marquette"), and Terral River Services, Inc. ("Terral River") (collectively, the "Barge Owners").[1]  When Hurricane Harvey made landfall, approximately 71 barges were moored at the Kirby Terminal.[2]  Argosy Barge Lines, LLC and Argosy Transportation Group, Inc. (collectively, "Argosy") also maintained a barge fleet in Greens Bayou (the "Argosy Terminal") that was located upstream from the Kirby Terminal.[3]  During the passage of Hurricane Harvey over Houston, four barges broke free from the Argosy Terminal.[4]  Kirby alleges that Argosy's breakaway barges caused damage to barges and equipment at the Kirby Terminal, ultimately resulting in 71 barges from the Kirby Terminal breaking free from their moorings.[5]  Kirby's unmoored barges then traveled downstream on Greens Bayou causing some barges to be partially capsized, fully capsized, or pinned down by other barges.[6]  Some of Kirby's barges also allided with Argos Ports (Houston) LLC ("Argos")'s facility.[7]  Ultimately, the collisions of the barges in Greens Bayou resulted

---

[1]See Second Amended and Restated Complaint ("Argos's Complaint"), Docket Entry No. 136, pp. 2-3; First Amended Third-Party Complaint of Kirby Inland Marine, LP ("Kirby's Third-Party Complaint"), Docket Entry No. 139, p. 5.

[2]See Argos's Complaint, Docket Entry No. 136, p. 3.

[3]See Kirby's Third-Party Complaint, Docket Entry No. 139, p. 6.

[4]See id.

[5]See id. at 6-8.

[6]See id. at 7.

[7]See Argos's Complaint, Docket Entry No. 136, p. 3.

in the Greens Bayou channel becoming impassable.[8] The "damming effect" caused by the sunken barges caused flooding and further destruction to facilities along the Greens Bayou channel, including Argos's facility.[9]

After the breakaway of Kirby's fleet, Kirby engaged a salvage company, T&T Salvage, LLC ("T&T Salvage") to formulate a salvage plan and commence salvage operations on all of the affected barges in the Greens Bayou channel, including those owned by Ceres, Ingram, Marquette, and Terral River.[10] T&T Salvage conducted a salvage operation that took approximately 70 days and cost more than $7,700,000.[11] Kirby paid T&T Salvage for its services.[12] All salvage rights that T&T Salvage possessed against the owners of the barges were assigned to Kirby by T&T Salvage.[13]

This action was initially brought by Argos against Kirby and Greens Bayou Fleeting, LLC ("GBF") alleging that Kirby and/or GBF's negligence was responsible for the damages its facility sustained during the storm.[14] After Kirby filed its answer to Argos's

---

[8]See id.

[9]See id.

[10]See Kirby's Third-Party Complaint, Docket Entry No. 139, p. 8.

[11]See id.

[12]See id.

[13]See id.

[14]See Complaint, Docket Entry No. 1.

Complaint, Kirby filed a Third-Party Complaint against Argosy asserting that Argosy's own negligence caused Argosy's barges to break free during the storm and travel downstream, impacting the barges in the Kirby Terminal and causing them to become unmoored, resulting in the ultimate allision of Kirby's barges with Argos's facility.[15] Argos subsequently amended its complaint to add claims against Argosy.[16] Kirby's Third-Party Complaint also alleged that the Barge Owners owe Kirby a salvage award for rescuing their barges after they were damaged during the storm.[17] The Barge Owners each filed counterclaims against Kirby and cross-claims against Argosy claiming that Kirby and/or Argosy's negligence caused the damage sustained by their barges.[18] Argosy subsequently filed a

---

[15]See Kirby's Third-Party Complaint, Docket Entry No. 139, pp. 8-9.

[16]See Argos's Complaint, Docket Entry No. 136.

[17]See Kirby's Third-Party Complaint, Docket Entry No. 139, pp. 10-12.

[18]See Ceres Consulting L.L.C.'s Answer to Original Third Party Complaint of Kirby Inland Marine, LP, Counterclaim Against Kirby Inland Marine, LP and Crossclaim Against Greens Bayou Fleeting, LLC, Argosy Barge Lines, LLC and Argosy Transportation Group, Inc. ("Ceres' Answer/Counterclaim/Crossclaim"), Docket Entry No. 32; Marquette Transportation Company, LLC's Answer to Original Third Party Complaint of Kirby Inland Marine, LP, Counterclaim Against Kirby Inland Marine, LP and Crossclaim against Greens Bayou Fleeting, LLC, Argosy Barge Lines, LLC and Argosy Transportation Group, Inc. ("Marquette's Answer/Counterclaim/Crossclaim"), Docket Entry No. 40; Ingram Barge Company's Answer and Affirmative Defenses to Kirby Inland Marine, LP's Third-Party Complaint, Cross-Claim, and Counterclaim ("Ingram's Answer/Counterclaim/Cross-claim"), Docket Entry No. 28; and Terral River Services Inc.'s Answer/Counter Claim/Cross Claim ("Terral River's Answer/Counterclaim/Cross-claim"), Docket Entry No. 58.

fourth-party complaint against several towing companies and vessels alleging that the breakaway of the Argosy fleet was caused by the fourth-party defendants' negligence.[19] The fourth-party defendants brought into this action by Argosy include Crosby Marine Transportation, LLC ("Crosby Marine") and E Squared Marine Service, L.L.C. ("E Squared"), among others.[20]

In its Motion to Dismiss, Terral River argues that Kirby's claims against Terral River should be dismissed because Terral River does not owe any salvage award to Kirby as a matter of law. Terral River also requests that the court hold separate trials for Kirby's salvage claims against the Barge Owners and the fleet breakaway liability claims composing the rest of this action. For the reasons explained below, Terral River's Motion to Dismiss and Terral River's Motion for Separate Trials will both be denied.

## II.   Terral River's Motion to Dismiss

Terral River moves to dismiss Kirby's salvage claim, arguing that Kirby is not entitled to a salvage award because Kirby contracted with T&T Salvage for T&T Salvage to rescue Terral River's barges and Terral River did not agree to the contract. Kirby disagrees, arguing that its voluntary acts rescued Terral River's barges from a marine peril, entitling Kirby to a salvage

---

[19]See Argosy Defendants' First Amended Fourth-Party Complaint, Docket Entry No. 65, pp. 5-8.

[20]See id. at 2-3.

award under both general maritime law and the Salvage Convention of 1989 (the "Salvage Convention").[21]

## A.    Standard of Review

The Federal Rules of Civil Procedure permit dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom., Cloud v. United States, 122 S. Ct. 2665 (2002). To defeat a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corporation v. Twombly, 127 S. Ct. 1955, 1974 (2007). In ruling on a Rule 12(b)(6) motion, the court must "accept the plaintiff's well pleaded facts as true and view them in the light most favorable to the plaintiff." Chauvin v. State Farm Fire & Casualty Co., 495 F.3d 232, 237 (5th Cir. 2007).

---

[21]See Kirby Inland Marine, L.P.'s Brief in Opposition to Third-Party Defendant Terral River Service, Inc.'s Rule 12(b)(6) Motion to Dismiss ("Kirby's Response to Terral River's MTD"), Docket Entry No. 129, p. 15; Kirby's Third-Party Complaint, Docket Entry No. 139, pp. 10-12. Kirby acknowledges that the Salvage Convention "did not change the general requirements for a salvage claim." See Kirby's Response to Terral River's MTD, Docket Entry No. 129, p. 15. The court will therefore apply general maritime law without conducting a separate analysis under the Salvage Convention.

## B. Applicable Law

"An award of salvage is generally appropriate when property is successfully and voluntarily rescued from marine peril." Margate Shipping Co. v. M/V JA Orgeron, 143 F.3d 976, 984 (5th Cir. 1998) (citing The Sabine, 101 U.S. 384, 384 (1880)). This rule is "peculiar to maritime law, and utterly at variance with terrene common law." Id. "Because of the peculiar dangers of sea travel, public policy has long been held to favor a legally enforced reward in this limited setting, to promote commerce and encourage the preservation of valuable resources for the good of society." Id.

Courts recognize two types of salvage: contractual salvage and pure salvage. To determine that a pure salvage was performed, a court must find three specific elements: "marine peril; service voluntarily rendered, not required by duty or contract; and success in whole or in part, with the services rendered having contributed to such success." B.V. Bureau Wijsmuller v. United States, 702 F.2d 333, 338 (2d Cir. 1983) (citing The Sabine, 101 U.S. at 384). The marine peril "must be present and impending, although it need not be immediate or absolute." Id. As long as the service was rendered voluntarily, the motive of the salvor is irrelevant -- salvors who perform services with the expectation of monetary gain may claim salvage awards. Id. at 338-39. The salvor must have also contributed to an ultimate success -- lack of success in rescuing the imperiled vessel precludes the granting of a salvage award. Id. at 339. If the court finds that the three elements of

pure salvage are met, the court will apply the factors articulated in The Blackwall, 77 U.S. 1 (1869), to determine the value of the salvage award: (1) the labor expended by the salvors in salvaging the vessel; (2) the promptitude, skill, and energy employed in rendering the service; (3) the value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed; (4) the risk incurred by the salvors in rescuing the property from the marine peril; (5) the value of the property saved; and (6) the degree of danger from which the property was rescued. Id. at 14.

A contractual salvage, on the other hand, is the "type of salvage service entered into between the salvor and the owners of the imperiled property, or by their respective representatives, pursuant to an agreement, written or oral, fixing the amount of compensation to be paid whether successful or unsuccessful in the enterprise." 3A Benedict on Admiralty § 159 (2019). The Supreme Court explained in The Camanche that "nothing short of a contract to pay a given sum for the services to be rendered, or a binding engagement to pay at all events, whether successful or unsuccessful in the enterprise, will operate as a bar to a meritorious claim for salvage." 75 U.S. 448, 477 (1869); see also Solana v. GSF Development Driller I, 587 F.3d 266, 271 (5th Cir. 2009). A contract for salvage can therefore serve as a defense to a pure salvage claim. Evanow v. M/V Neptune, 163 F.3d 1108, 1115 (9th Cir. 1998). The existence of a contract for salvage or to provide

-8-

services to a distressed vessel precludes the necessary voluntariness required for a finding that a pure salvage was performed. <u>Joseph v. J.P. Yachts, LLC</u>, 436 F. Supp. 2d 254, 266 (D. Mass. 2006).

A salvor may seek a salvage award through an <u>in personam</u> action against the owner of the vessel or an <u>in rem</u> action against the vessel itself. <u>The Sabine</u>, 101 U.S. at 386 ("Suits for salvage may be *in rem* against the property saved or the proceeds thereof, or *in personam* against the party at whose request and for whose benefit the salvage service was performed."). Salvage awards are typically enforced through maritime liens. <u>See</u> <u>id.</u> at 386. "By performing a voluntary and successful act, the salvor obtains a maritime lien on the salved property, which he can enforce *in rem* in an admiralty court." <u>Adams v. Unione Mediterranea Di Sicurta</u>, 220 F.3d 659, 670 (5th Cir. 2000) (internal quotations omitted).

## C. Analysis

Terral River is the owner of some of the barges rescued by T&T Salvage pursuant to its contract with Kirby during the Greens Bayou cleanup. All salvage rights held by T&T Salvage were fully assigned to Kirby.[22] Kirby is the only party who claims that it is entitled to a salvage award: Kirby argues in its Third-Party Complaint that it "is entitled to recover the cost of salvage of

---

[22]<u>See</u> Kirby's Third-Party Complaint, Docket Entry No. 139, p. 10 ¶ 36.

the barges from Ceres, Ingram, Marquette, and Terral River under the law of marine salvage as well as the Salvage Convention of 1989 because it successfully rescued the barges from marine peril."[23] Kirby's claim sounds in pure salvage, rather than contractual salvage.

Terral River argues that because Kirby hired T&T Salvage to rescue Terral River's barges, this case involves a "contract salvage," barring Kirby from seeking a pure salvage award from Terral River. It is undisputed that T&T Salvage did not act as a volunteer in salvaging Terral River's barges. T&T Salvage was contracted by Kirby to rescue and clean up the barges and was paid by Kirby for the services it performed. Terral River did not have a contractual relationship with Kirby that created any duty for Kirby to salvage Terral River's barges. Nor was Terral River a party to the contract between Kirby and T&T Salvage. General maritime law on contractual salvage contemplates a contract running between the owner of the property to be salvaged (or the owner's representative) and the salvor. No such contract existed between the Barge Owners and T&T Salvage or Kirby that would give either T&T Salvage or Kirby the right to claim a contractual salvage award from the Barge Owners. Because there was no contractual relationship among Terral River, Kirby, and/or T&T Salvage that would give rise to a claim for contractual salvage under general

---

[23]See id.

maritime law, Kirby does not have a claim for contractual salvage against Terral River.

Terral River argues that Kirby Marine's contract with T&T Salvage prevents the court from finding that Kirby acted with the requisite voluntariness for a pure salvage award. However, Terral River's arguments presuppose that Kirby's only salvage rights in this case come from the assignment from T&T Salvage. To determine if Kirby has a cognizable salvage claim against Terral River, the court must determine whether Kirby's actions satisfied the elements of pure salvage. Terral River does not contest that its barges were in "marine peril" after the fleet breakaway. Nor does Terral River contest that the salvage operation was ultimately successful in rescuing Terral River's barges. Terral River only argues that Kirby is not able to prove that the services performed by Kirby (and T&T Salvage) were rendered voluntarily.

Few courts have addressed similar facts. In <u>Lewis v. JPI Corporation</u>, No. 07-20103-CIV, 2009 WL 3761984 (S.D. Fla. Nov. 9, 2009), Theresa and Clive Lewis saw a boat taking on water, and Clive boarded the vessel and found that an air-conditioning hose had detached. <u>Id.</u> at *1. He reattached the hose and stopped the inflow of water. <u>Id.</u> at *2. He subsequently called a company to pump the water from the leak out of the boat. <u>Id.</u> The owner of the boat paid the cost of the pump-out to the Lewises. <u>Id.</u> at *2. The court concluded that because the marine peril ended after the man stopped the leak, the salvage award owed to the couple would

-11-

not include the pump-out the next morning since the vessel was no longer in distress when the pump-out was performed. Id. at *4. However, the court did not rule out the possibility that the salvage award owed to the Lewises could have included the pump-out had the vessel still been in distress the next morning, even though the Lewises paid someone else to perform that service. See id.

Kirby's salvage claims against the Barge Owners are unusual. Typical maritime salvage claims are brought by salvors who themselves ventured into a marine peril to render assistance to a troubled vessel. Here, Kirby contracted with T&T Salvage to perform the actual rescue, likely because it was not capable of salvaging the distressed barges on its own. Although Kirby did not venture out into peril to rescue Terral River's barges, Kirby acted voluntarily in contracting T&T Salvage to rescue Terral River's barges. Terral River admits that Kirby had no obligation to save Terral River's barges. Kirby's motive in saving the barges is irrelevant to whether Kirby has stated a plausible claim for pure maritime salvage -- courts have long recognized that a salvor can rescue a vessel in marine peril with the motivation of ultimately achieving payment in return.[24] See B.V. Bureau Wijsmuller, 702 F.2d

---

[24]Crosby Marine filed briefing in support of Terral River's Motion to Dismiss. See Crosby Marine Transportation, LLC's Memorandum in Support of Terral River Service, Inc.'s 12(b)(6) Motion to Dismiss, Docket Entry No. 123, p. 2. Crosby Marine argues that Kirby is barred from recovery (1) by the application of the pure economic loss doctrine articulated in Robins Dry Dock & Repair Co. v. Flint, 48 S. Ct. 134 (1927), and (2) because the
(continued...)

at 339 ("Whatever motive impels the true volunteer, be it monetary gain, humanitarian purposes or merely error, it will not detract from the status accorded him by law.").

While the salvage services rendered by Kirby are not those traditionally contemplated by general maritime law, Terral River points to no precedent precluding a finding of voluntariness when a salvor contracts with an agent to perform the salvage service on the salvor's behalf. The court need not decide what effect Kirby's agreement with T&T Salvage will have on any salvage award Kirby may ultimately obtain, since that issue is not before the court. The court need only decide whether Kirby's Third-Party Complaint states a plausible claim for pure maritime salvage against Terral River. Because the existence of Kirby's contract with T&T Marine does not preclude Kirby from asserting a pure salvage claim against Terral River and the other Barge Owners as a matter of law, Terral River's Motion to Dismiss will be denied.

### III.  Motion for Separate Trials

Terral River argues that this action involves two separate issues that should be separated into two trials:  one trial

---

[24] (...continued)
payment to T&T Marine was voluntary and made without consideration under Texas law.  Robins Dry Dock is not applicable.  General maritime law allows Kirby to recover a salvage award from Terral River if the elements of pure salvage are met -- a claim for pure salvage does not require that Kirby have suffered "physical damage to a proprietary interest."  Crosby Marine's second argument is also unpersuasive because this case is governed by general maritime law, rather than Texas contract law.

resolving liability for the fleet breakaways, and another resolving

the salvage claims made by Kirby against the Barge Owners in it's

Third-Party Complaint. Several parties have filed briefing

opposing Terral River's Motion for Separate Trials, including

Ingram, Marquette, and Ceres -- the three other similarly situated

Barge Owners.[25]

## A.    Standard of Review and Applicable Law

A district court has discretion to order separate trials of

one or more claims or issues "[f]or convenience, to avoid

prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b).

The Fifth Circuit has cautioned that for bifurcation to be

appropriate, the "issue to be tried [separately] must be so

distinct and separable from the others that a trial of it alone may

be had without injustice." Swofford v. B & W, Inc., 336 F.2d 406,

---

[25]See Ingram Barge Company's Opposition to Terral River
Service, Inc.'s Motion for Separate Trials, Docket Entry No. 120;
Response of Marquette Transportation Company, LLC and Ceres
Consulting L.L.C. to Terral River Service, Inc.'s Motion for
Separate Trials Under Rule 42(b), Docket Entry No. 126.

In addition to the other barge owners, Kirby, Argosy, Crosby
Marine, and E Squared have also filed briefings opposing Terral
River's Motion for Separate Trials. See Kirby Inland Marine,
L.P.'s Brief in Opposition to Third-Party Defendant Terral River
Service, Inc.'s Motion for Separate Trials Under Rule 42(b), Docket
Entry No. 122; Argosy Defendants' Memorandum in Opposition to
Terral River Services' Motion for Separate Trials, Docket Entry
No. 121; Crosby Marine Transportation, LLC's Memorandum in
Opposition to Terral River Service, Inc.'s Motion for Separate
Trials, Docket Entry No. 124; E Squared Marine Service, LLC's
Memorandum in Opposition to Terral River Service, Inc.'s Motion for
Separate Trials, Docket Entry No. 130.

415 (5th Cir. 1964), <u>cert. denied</u>, 85 S. Ct. 653 (1965).

Separation of issues for separate trials is not the usual course

that should be followed. <u>McDaniel v. Anheuser-Busch, Inc.</u>, 987

F.2d 298, 304 (5th Cir. 1993). The burden falls on the party

seeking separate trials to prove that separation is necessary.

<u>Crompton Greaves, Ltd. v. Shippers Stevedoring Co.</u>, 776 F. Supp. 2d

375, 402 (S.D. Tex. 2011).

## B.   Analysis

This action involves a number of overlapping issues that fall

into two loose categories:   (1) claims by multiple parties relating

to liability for damage caused by the various fleet breakaways and

(2) Kirby's salvage claims against the Barge Owners.   After Kirby

brought the Barge Owners into this action in its Third-Party

Complaint, each of the Barge Owners (including Terral River) filed

counterclaims against Kirby and cross-claims against Argosy

alleging the same claims and factual assertions.   For example,

Terral River's Answer/Counterclaim/Cross-Claim alleges both that

Kirby was negligent in failing to secure Terral River's barges,

ultimately causing their breakaway and subsequent damage, and that

Argosy was negligent in allowing its barges to breakaway and

subsequently causing damage to Terral River's barges.[26]   The Barge

Owners are parties to both the fleet breakaway liability claims and

---

[26]<u>See</u> Terral River Services Inc.'s Amended Motion to Dismiss,
Answer/Counterclaim/Cross Claim, Docket Entry No. 115, pp. 6-9.

-15-

the salvage claims. Terral River argues that bifurcation of the fleet breakaway claims and Kirby's salvage claims would allow the Barge Owners to avoid participating in unnecessary discovery on the fleet breakaway claims. The court is not persuaded by Terral River's arguments.

Common questions of law and fact must be answered to resolve all of the pending claims. Because each of the Barge Owners filed its own counterclaims against Kirby (and cross-claims against Argosy), "the Barge Owners will necessarily be involved and have an interest in the fleet breakaway liability portion of the trial."[27] Separation of the fleet breakaway and salvage issues would therefore require the Barge Owners to participate in (and bear the costs of litigating) two different lawsuits arising from the same factual transaction. Moreover, while the Barge Owners may end up being liable to Kirby for a salvage award, Kirby may also ultimately owe damages to the Barge Owners for damage to their barges caused by the fleet breakaways. Terral River's Motion for Separate Trials will therefore be denied.

## IV. Conclusion

Terral River has failed to demonstrate that Kirby's claim for pure salvage fails as a matter of law. Terral River has also

---

[27]See Ingram Barge Company's Opposition to Terral River Service, Inc.'s Motion for Separate Trials, Docket Entry No. 120, p. 3.

failed to carry its burden to show that holding separate trials for the salvage and fleet breakaway issues is appropriate. Therefore, Third Party Defendant Terral River Service, Inc.'s Brief Supporting Rule 12(b)(6) Motion to Dismiss (Docket Entry No. 112) and Terral River Services Inc.'s Amended Motion to Dismiss (Docket Entry No. 115) are **DENIED**; and Terral River Service, Inc.'s Motion for Separate Trials (Docket Entry No. 113) is **DENIED.**

**SIGNED** at Houston, Texas, on this the 2nd day of May, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE