United States District Court
Southern District of Texas
**ENTERED**
April 12, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ARGOS PORTS (HOUSTON) LLC, §
 §
        Plaintiff, §
 §
v. §
 §  CIVIL ACTION NO. H-18-00327
KIRBY INLAND MARINE, LP and §
GREENS BAYOU FLEETING, LLC, §
et al., §
 §
        Defendants. §

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Barge Owners' Motion for Summary Judgment Seeking Dismissal of Kirby Inland Marine, LP's Third-Party Complaint ("Barge Owners' Motion") (Docket Entry No. 393). For reasons stated below, the Barge Owners' Motion will be **GRANTED**.

I.   **Factual and Procedural Background**

The following facts are not disputed. On February 5, 2018, Plaintiff, Argos Ports (Houston) LLC ("Argos") filed suit against Kirby Inland Marine, LP ("Kirby") and Greens Bayou Fleeting, LLC ("Greens Bayou") (collectively, "Defendants"), alleging that certain barges under Defendants' control broke free from their moorings during Hurricane Harvey and damaged Argos' property.[1] Kirby was acting as bailee for Marquette Transportation Company,

---

[1]Complaint, Docket Entry No. 1, pp. 2-3. For purposes of identification, all page numbers refer to the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

LLC ("Marquette"), Ceres Consulting L.L.C. ("Ceres"), Ingram Barge Company ("Ingram"), and Terral River Service, Inc. ("Terral") (collectively, the "Barge Owners") when the hurricane struck.[2]

At the time of the hurricane, Kirby and T&T Salvage, LLC ("T&T") were party to an agreement ("Kirby and T&T Agreement") that designated T&T as the "Salvage and Firefighting Primary Resource Provider to be listed in [Kirby's United States Coast Guard Vessel Response Plan]."[3] Pursuant to the Kirby and T&T Agreement, Kirby retained T&T to remove the barges from Greens Bayou after the hurricane, and ultimately paid T&T $7,696,264.79.[4] T&T acknowledges that it has been paid in full for its services.[5] On February 2, 2018, Kirby and T&T entered into an Assignment of Salvage Rights Agreement ("Assignment"), pursuant to which T&T purported to assign to Kirby whatever salvage rights it had "for salvage services rendered to the barges at Greens Bayou owned by the Barge Owners."[6]

---

[2] Barge Owners' Motion, Docket Entry No. 393, p. 6; First Amended Third-Party Complaint of Kirby Inland Marine, LP ("Amended Complaint"), Docket Entry No. 139, p. 5 ¶ 16 (stating that Kirby maintained the barges).

[3] Agreement of April 4, 2013, Exhibit F to Barge Owners' Motion, Docket Entry No. 393-6, p. 1 ¶ 1.0.

[4] See T&T Chase Operating Account Statement for the period February 1, 2018, through February 28, 2018, Exhibit G to Barge Owners' Motion, Docket Entry No. 393-7.

[5] Oral and Videotaped Deposition of Kevin Teichman, July 2, 2020, Exhibit E to Barge Owners' Motion, Docket Entry No. 393-5, p. 2 lines 12-19.

[6] Assignment, Exhibit H to Barge Owners' Motion, Docket Entry No. 393-8, p. 1, Section 2.

On March 9, 2018, Kirby filed a Third-Party Complaint against the Barge Owners, seeking to recover expenses incurred for the salvage work that T&T performed.[7] Each of the Barge Owners responded by filing Counterclaims against Kirby for damages to their individual barges, alleging that Kirby's negligence caused or contributed to the Breakaway.[8] On April 12, 2019, Kirby filed its Amended Complaint, seeking to "recover the cost of salvage of the barges from Ceres, Ingram, Marquette, and Terral River under the law of marine salvage as well as the Salvage Convention of 1989 because it successfully rescued the barges from marine peril."[9]

On May 2, 2019, the court denied Third Party Defendant Terral River Service, Inc.'s Brief Supporting Rule 12(b)(6) Motion to Dismiss ("Terral's Motion") (Docket Entry No. 112), holding that "[b]ecause there was no contractual relationship among Terral River, Kirby, and/or T&T Salvage that would give rise to a claim for contractual salvage under general maritime law, Kirby does not have a claim for contractual salvage against Terral River,"[10] but also holding that Kirby had stated a claim for voluntary salvage.[11]

---

[7]Original Third-Party Complaint of Kirby Inland Marine, LP, Docket Entry No. 9, p. 10 ¶ 34.

[8]See Barge Owners' Motion, Docket Entry No. 393, p. 8.

[9]Amended Complaint, Docket Entry No. 139, p. 10 ¶ 36.

[10]Memorandum Opinion and Order, Docket Entry No. 155, pp. 10-11.

[11]Id. at 13.

On February 2, 2022, the Barge Owners filed their Barge Owners' Motion (Docket Entry No. 393). Kirby filed a response on February 16, 2022.[12] The Barge Owners filed a reply on February 23, 2022.[13]

## II.   Legal Standard

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show there is no genuine issue as to any material fact and therefore the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986). The party moving for summary judgment does not need to offer evidence disproving the non-moving party's claim — it only needs to show that there is an absence of evidence to support the nonmoving party's case. Celotex, 106 S. Ct. at 2554. Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 2552.

---

[12]Defendant Kirby Inland Marine's Brief in Response to Plaintiff's (Amended) Motion for Summary Judgment ("Kirby's Response"), Docket Entry No. 395.

[13]Memorandum in Reply to Kirby Inland Marine's Brief in Response to Barge Owners' Motion for Summary Judgment Seeking Dismissal of Kirby Inland Marine, LP's Third-Party Complaint, Docket Entry No. 399.

When summary judgment is sought by a defendant on a plaintiff's claim, the plaintiff must present more than a "mere scintilla" of evidence in support of his position — that is, the plaintiff must present "evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2512 (1986).

> In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, . . . and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial.

Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004).

### III.  Analysis

**A.  Kirby Is Not a Voluntary Salvor**

Kirby seeks compensation for the salvage costs it incurred when it hired T&T to recover barges that broke away while under Kirby's exclusive control.[14] Kirby requests a warrant for the attachment of the barges so that they may be condemned and sold.[15] The Barge Owners argue that "Kirby's actions were not voluntary

---

[14] Amended Complaint, Docket Entry No. 139, p. 5 ¶ 16 (stating that Kirby maintained the barges); p. 6 ¶ 21 (recounting the breakaway); p. 8 ¶ 28 (describing Kirby's engagement of T&T); p. 10 ¶ 36 (seeking to recover from Barge Owners the cost of salvaging the barges).

[15] Id. at 11 ¶ 36(d)(2).

based on the bailment relationship that existed with the Barge Owners and Kirby's obligation to exercise reasonable care for the barges in its control."[16]  Kirby argues that its claim is not foreclosed because "when the barges broke away from the moorings through the negligence of a third party, Kirby ceased being a bailee, and any salvage efforts undertaken after that point were voluntary."[17]

"[A]dmiralty recognizes two methods of creating a lien for salvage services, by pure salvage and by contract." Veverica v. Drill Barge Buccaneer No. 7, 488 F.2d 880, 883 (5th Cir. 1974). The court has already held that Kirby does not have a contractual salvage claim.[18]  A claim for pure salvage has three elements: (1) the existence of a marine peril, (2) services that are voluntarily rendered when not required by an existing duty or special contract, and (3) success in whole or in part. The SABINE, 101 U.S. 384, 384 (1879); West Coast Shipping Brokers Corp., M/V "Cebu 1" v. Ferry "CHUCHEQUERO", 582 F.2d 959, 960 (5th Cir. 1978). The parties do not dispute that a maritime peril existed or that the salvage operation was successful — the only dispute is whether the salvage services rendered by Kirby and T&T were rendered voluntarily.

---

[16] Barge Owners' Motion, Docket Entry No. 393, pp. 10-11.

[17] Kirby's Response, Docket Entry No. 395, p. 5.

[18] Memorandum Opinion and Order, Docket Entry No. 155, p. 10.

Once the barges were delivered to Kirby, a bailment relationship was established, and Kirby as bailee had a duty to exercise reasonable care of the barges and keep them adequately moored at all times. See Dow Chemical Co. v. Barge UM-23B, 424 F.2d 307, 311 (5th Cir. 1970) ("As a wharfinger, Cargo Carriers was not an insurer of the barges . . . it was, however, a bailee for hire and was required to see to it that the barges were adequately moored at all times."); Conagra, Inc. v. Weber Marine, Inc., Nos. Civ. A. 97-1019, Civ. A. 98-3829, 2000 WL 943198, at *5 (E.D. La. July 7, 2000) ("A fleeter is responsible for the care of barges in its custody, and that includes a duty to ensure that the barges are adequately moored.").

In the context of salvage, a party that has a pre-existing duty to a vessel is generally not considered a volunteer and not allowed to recover in salvage based on actions encompassed by those duties. See In re American Oil Co., 417 F.2d 164, 167 (5th Cir. 1969) ("[T]he salvor's act must be voluntary, that is, he must be under no official or legal duty to render the assistance.") (internal quotations and citation omitted). The Fifth Circuit has held that the bailee of a vessel cannot engage in a pure salvage of that vessel because such a salvage would not be voluntary. See Terral River Service, Incorporated v. SCF Marine Incorporated, 20 F.4th 1015, 1020 (5th Cir. 2021) ("Terral fails as to the second element [voluntariness] because it had a preexisting duty as the

barge's bailee, a duty of ordinary care owed to SCF, that forecloses its salvage claim."). Like the bailee in Terral River, Kirby owed a preexisting duty to the vessels it salvaged, and therefore Kirby's salvage efforts — including its hiring T&T — were not voluntary and cannot support a pure salvage claim.

Kirby argues that Terral River is different from this case because the barges in Terral River sank while they were in Terral's control,[19] while in this case "the barges broke away from the moorings through the negligence of a third party[.]"[20] The court is not persuaded that a breakaway terminates the duty of a barge's bailee, given that one of a bailee's duties is to prevent breakaways from happening in the first place. See Dow Chemical, 424 F.2d at 311 (holding that a bailee for hire had a duty to "see to it that the barges were adequately moored at all times"). To support its argument, Kirby cites The Gulfport, 250 F. 577, 580 (5th Cir. 1918), in which the Fifth Circuit held that a bailee that lost control of a tug due to an act of God, a hurricane, was not "under a duty to regain possession of bailed property so taken from it," and that "the bailor [was therefore] chargeable with the expense necessarily incurred to accomplish this result."[21] Kirby omits that the bailee in Gulfport was performing its salvage

---

[19]Kirby's Response, Docket Entry No. 395, p. 12.

[20]Id. at 5.

[21]Id. at 20.

pursuant to a contract with the bailor, and thus the Fifth Circuit did not inquire into whether the salvage was voluntary. See id. ("It is not necessary to determine whether the service in question would have had all the elements of a salvage one if it had been rendered voluntarily and not under a contract."). The dispute in Gulfport was whether the contract at issue was a maritime contract, not whether the salvage was performed voluntarily. Gulfport therefore is not relevant to the issue in this case — the question of voluntariness.

Terral River, however, directly addresses that question: The bailee of a barge has a preexisting duty that forecloses any salvage claims it might make as to that barge as a matter of law, regardless of who was at fault for the sinking of the vessel. See Terral River, 20 F.4th at 1020. It is not a question of whether Kirby is under a duty to "regain possession of bailed property" taken from it by an act of God — the duty that forecloses Kirby's voluntary salvage claim is its duty to prevent the loss of the property in the first place.

This conclusion is consistent with earlier cases holding that duties similar to those of a bailee preclude voluntary salvage claims. For example, like a ship's bailee, a ship's crew must exercise reasonable care for the vessel in their custody and control; both are bound to keep the vessel in their custody free from harm, including insuring the vessel is moored properly; and both can be held responsible for damage caused by the vessel within their control.

It is a longstanding rule of salvage law that crewmembers are not entitled to a salvage award for saving a ship on which they are crewmembers because it is within their duty to the ship. See, e.g., Bertel v. Panama Transport Co., 109 F. Supp. 795, 797 (S.D.N.Y. 1952) (holding that seamen are not considered volunteers entitled to salvage for services rendered in saving their own ship unless the services are rendered after their employment has been terminated by an unmistakable discharge or by a final abandonment of the ship without hope of return or expectation of recovery); Drevas v. United States, 58 F. Supp. 1008, 1010 (D. Md. 1945) ("Members of the crew of a vessel are not permitted to participate in salvage awards unless their ship has been abandoned without hope of recovery, or the crew has been legally discharged from further services by the master.").

The reason for this rule is that "it is within the duty of the crew in case of danger to the ship to exert themselves to save the ship." Drevas, 58 F. Supp. at 1010. "[I]t would be unwise to tempt [the crew] to get the ship and cargo into a position of danger in order that by extreme exertion they might claim salvage compensation." Elrod v. Luckenbach S.S. Co., Inc., 62 F. Supp. 935, 936 (S.D.N.Y. 1945). This same rationale supports the Terral River court's holding that a barge's bailee is not entitled to salvage — it would be "unwise" to "tempt" bailees to place the vessels in their care in a position of danger by which they may profit. Kirby argues that its relationship to the barges is more

like the relationship between the crew of one vessel and another vessel, but this argument is premised on the same reasoning that the court rejected, i.e., that once the barges broke loose, Kirby was under no duty ro "regain" them.[22]  The court concludes that Kirby's salvage claim against the Barge Owners is foreclosed by Kirby's duties as bailee.

### B.   T&T Had No Salvage Rights to Assign to Kirby

The Barge Owners argue that even if Kirby had acted voluntarily in salvaging the barges, Kirby would still have no claim against the Barge Owners for the money it paid to T&T, because (1) such claim would be predicated on salvage rights that T&T assigned to Kirby; (2) T&T never had a salvage claim against the Barge Owners; and (3) any salvage claim T&T might have had against the Barge Owners was extinguished when Kirby paid T&T for its salvage services.

Kirby's claim to recover T&T's salvage costs is predicated on the Assignment,[23] which provided that T&T's salvage claims against the Barge Owners would be assigned to Kirby.[24]  The court already found when it ruled on Terral's Motion that T&T was not a volunteer

---

[22]Id. at 21.

[23]See id. at 5 ("Kirby has produced evidence sufficient to raise an issue of material fact as to its ability to recover its agent's salvage costs as a result of the assignment agreement.").

[24]See Assignment, Exhibit H to Barge Owners' Motion, Docket Entry No. 393-8, p. 1 Section 2.

and thus would have no right to pure salvage.[25] The court also found that because T&T had no contract with the Barge Owners, it had no claim for contractual salvage against the Barge Owners. Because T&T had no salvage claim against the Barge Owners, it had no claim to assign to Kirby. See Quality Infusion Care, Inc. v. Health Care Service Corp., 628 F.3d 725, 729 (5th Cir. 2010) (holding that "an assignee takes all the rights of an assignor, no greater and no less" and "an assignee stands in the same position as its assignor stood") (internal quotations, citations, and alterations omitted); 6A Corpus Juris Secundum Assignments § 88 (2016) ("[A]n assignment does not confer upon the assignee any greater right or interest than that possessed by the assignor, as the assignee can stand in no better position than the assignor."). Because Kirby's claim to recover T&T's salvage costs is based on T&T's purported assignment of a claim that T&T never had, Kirby's claim fails as a matter of law.

Kirby does not dispute the Barge Owners' argument that T&T had no salvage claim to assign to Kirby. Instead, Kirby argues that "[s]alvage claims are assignable, and assignments do not extinguish liens against salved property."[26] This may be an accurate statement of the law, but it is not in dispute. The Barge Owners never argued that salvage claims were not assignable or that T&T's

---

[25]Memorandum Opinion and Order, Docket Entry No. 155, p. 10.

[26]Kirby's Response, Docket Entry No. 395, p. 27.

purported assignment of its salvage claim to Kirby extinguished a lien on the barges. The Barge Owners' argument is that T&T lacked a valid salvage claim to assign to Kirby in the first place. The court is persuaded by that argument, and therefore the court will grant the Barge Owners' Motion with respect to Kirby's claim to recover T&T's salvage costs.

Moreover, even if T&T had a valid salvage claim and assigned it to Kirby, any claim T&T might have had would have been extinguished by payment. Kirby seeks a warrant for attachment of the salvaged barges and asks that said vessels "may be condemned and sold to pay for [salvage costs], costs and attorneys' fees[.]"[27] Kirby is therefore seeking a maritime lien, a special property right in a vessel that "arises when the debt arises, and grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." World Fuel Services, Inc. v. MAGDALENA GREEN M/V, 464 F. App'x 339, 341 (5th Cir. 2012) (internal quotations and citations omitted). "[After] the debt is repaid and satisfaction is acknowledged, the lien ceases to exist." Id. (citing Mullane v. Chambers, 438 F.3d 132, 138 (1st Cir. 2006)). See also Maritrend, Inc. v. M/V SEBES, Civ. A. No. 96-3140, 1997 WL 660614, at *2 (E.D. La. Oct. 23, 1997) (stating that "the contractor acquires a maritime lien against the vessel until payment is satisfied") (emphasis added). There is no dispute that

---

[27]Amended Complaint, Docket Entry No. 139, p. 11 ¶ 36(d)(2).

T&T was paid in full for its services.[28] The payment was received February 2, 2018,[29] the same day that T&T and Kirby executed the Assignment.[30]

The court concludes that T&T had no claim to assign to Kirby because T&T never had a contractual or pure salvage claim to assert against the Barge Owners and because at the time of the purported assignment, T&T's claim had been satisfied by payment. Accordingly, Kirby's claims fail as a matter of law to the extent that they are based on Kirby's right to be paid for the salvage services rendered by T&T.[31]

## IV.  Conclusion and Order

For the reasons explained above, the Barge Owners' Motion for Summary Judgment Seeking Dismissal of Kirby Inland Marine, LP's

---

[28]See T&T Chase Operating Account Statement for the period February 1, 2018, through February 28, 2018, Exhibit G to Barge Owners' Motion, Docket Entry No. 393-7, p. 1 (showing a payment from Kirby to T&T for "Salvage Invoice - Greens Bayou Fleet Response" in the amount of $7,696,264.79); Kirby's Response, Docket Entry No. 395, p. 6 ("Kirby paid T&T for its salvage services.").

[29]See T&T Chase Operating Account Statement for the period February 1, 2018, through February 28, 2018, Exhibit G to Barge Owners' Motion, Docket Entry No. 393-7, p. 2.

[30]See Assignment, Exhibit H to Barge Owners' Motion, Docket Entry No. 393-8, p. 1 ¶ 5 (stating that Kirby had already paid T&T for "services rendered to the barges owned by the Barge Owners.").

[31]Kirby argues that it "has an independent salvage claim based on its own salvage work, and thus its claims do not rest solely upon an assignment of rights from T&T." Kirby's Response, Docket Entry No. 395, p. 28. Accordingly, Section B addresses only the part of Kirby's claim that is based on amounts it paid to T&T. However, as the court explained in Section A, Kirby's entire claim fails as a matter of law because Kirby is not a volunteer salvor.

Third-Party Complaint (Docket Entry No. 393) is **GRANTED**; and the First Amended Third-Party Complaint of Kirby Inland Marine, LP (Docket Entry No. 139) is **DISMISSED WITH PREJUDICE** as to the Barge Owners.

**SIGNED** at Houston, Texas, on this the 12th day of April, 2022.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE